UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br>　　　　　Plaintiff,<br>　　v.<br>SHAMSUDDIN DOST, et al.,<br>　　　　　Defendants. | Case No. 16-cr-00403-JD<br><br>**ORDER RE MOTION TO DISMISS AND MOTION TO SUPPRESS** |

Jawed Ahmadi, a foreign national, is charged with co-defendant Dost in an indictment for conspiracy to distribute one kilogram or more of heroin for the purpose of unlawful importation under 21 U.S.C. § 963. Dkt. No. 1. The indictment is based on conduct that occurred in in Afghanistan and other overseas locations, and Ahmadi seeks to dismiss the case for lack of federal jurisdiction and to suppress statements he made following his arrest. Dkt. Nos. 32, 33. The motions are denied.

## BACKGROUND

Ahmadi was born in Peshawar, Pakistan in 1991. Dkt. No. 33 at 1. Although his parents are Afghan citizens, they fled Afghanistan in the 1980s and lived as refugees in Pakistan. *Id.* Ahmadi grew up in Pakistan, moved to Kabul, Afghanistan in 2011, and has traveled regularly between the two countries since then. *Id.* His native language is Dari, an Afghan dialect of Farsi, and he has at least some command of English. *Id.*

The indictment in based on Ahmadi's alleged involvement in the delivery and sale of heroin to undercover law enforcement agents. Dkt. No. 32 at 1. The parties disagree on some of the facts, but for the purposes here Ahmadi acknowledges that the United States Drug Enforcement Administration ("DEA") and the Afghan Sensitive Investigative Unit ("SIU") have

worked together on drug trafficking investigations. *Id.* at 4-5. In 2016, the San Francisco field division of the DEA opened an investigation into defendant Dost, an Afghan national who had recently immigrated to the United States. *Id.* at 5. The government believes that Ahmadi and Dost were working together to send illegal drugs from Afghanistan to the United States. *See* Dkt. No. 36 at 1.

In September 2016, a grand jury in the Northern District of California indicted Ahmadi with one count for conspiracy to distribute heroin for the purpose of unlawful importation. Dkt. No. 1. The Department of Justice authorized a plan to bring Ahmadi to the United States for prosecution. Dkt. No. 32 at 9-10. Ahmadi arrived at the San Francisco International Airport in November 2016 and was immediately arrested and taken to the San Bruno police department. *Id.*; Dkt. No. 33 at 2. He was read his *Miranda* rights and agreed to talk with DEA agents for over ninety minutes, with the help of a Dari-English interpreter. Dkt. No. 33 at 2-3; *see also* Dkt. No. 37-1, Exh. A (video of post-arrest interview filed under seal). Ahmadi made incriminating statements the alleged drug trafficking. *See* Dkt. No. 36 at 5-6.

After the DEA interview, Ahmadi appeared before a magistrate judge in this district and was ordered detained. Dkt. Nos. 6, 10. The parties have exchanged discovery, Dkt. Nos. 29, 31, and Ahmadi now asks to dismiss the indictment for lack of jurisdiction on the grounds that the charged conduct has no nexus with the United States. Dkt. No. 32. While Ahmadi admits that he "foolishly played a role" in delivering heroin to undercover law enforcement, he argues that the proper forum for prosecution is Afghanistan, not the United States. *Id.* at 1. He requests an evidentiary hearing on these challenges. *Id.* at 17. Ahmadi also seeks to suppress his post-arrest statements because he did not knowingly and intelligently waive his *Miranda* rights. Dkt. No. 33.

## I. MOTION TO DISMISS

While there is "no constitutional bar to the extraterritorial application of penal laws," courts must assume that Congress was only legislating domestically in the absence of clear congressional intent otherwise. *Chua Han Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir. 1984); *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). Ahmadi concedes that Congress intended to reach extraterritorial conduct under 21 U.S.C. § 963. Dkt. No. 47 at 2-3;

*see also Chua Han Mow*, 730 F.2d at 1311. Consequently, his jurisdictional challenge turns on the due process question of whether the government has "a sufficient nexus between the conduct condemned and the United States such that the application of the statute would not be arbitrary or fundamentally unfair to the defendant." *United States v. Medjuck*, 156 F.3d 916, 918 (9th Cir. 1998) (internal quotation marks and citation omitted).

The due process concern is that a "defendant prosecuted in the United States should reasonably anticipate being haled into court in this country." *United States v. Shi*, 525 F.3d 709, 722 (9th Cir. 2008) (internal quotation marks omitted); *see also United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013) ("What appears to be the animating principle governing the due process limits of extraterritorial jurisdiction is the idea that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964))). To this end, the Ninth Circuit has found that a nexus may be established "by a showing that an attempted transaction is aimed at causing criminal acts within the United States." *United States v. Zakharov*, 468 F.3d 1171, 1177 (9th Cir. 2006) (internal quotation marks omitted). An adequate nexus may also exist when an activity "threatens the security or governmental functions of the United States." *United States v. Peterson*, 812 F.2d 486, 494 (9th Cir. 1987). Other circuits have found federal jurisdiction when defendants intended to cause harm inside the United States or to its interests. *See United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1133 (N.D. Cal. 2015) (citing cases). Cases in which due process concerns barred the extraterritorial application of a federal criminal statute are rare. *Ali*, 718 F.3d at 944 n.7 (D.C. Cir. 2013).

Here, no due process problems defeat the indictment at this stage of the case. The indictment itself states a nexus in alleging that Ahmadi conspired to distribute heroin "intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States." Dkt. No. 1; *Medjuck*, 156 F.3d at 919 (Nexus "clearly encompasses conspiracies that plan the shipment of drugs that are destined for the United States."). Ahmadi's alleged co-conspirator was based in California, which is another clear connection to the United States. Drug trafficking is also "condemned universally," *United States*

3

*v. Rojas*, 812 F.3d, 382, 393 (5th Cir. 2016), and constitutes "the sort of threat to our nation's ability to function that merits application of the protective principle of jurisdiction." *Peterson*, 812 F.2d at 494. These factors are enough to find federal jurisdiction to proceed with the case.

Ahmadi says that an evidentiary hearing is required because the evidence shows only vague discussions about bringing drugs into the United States and falls short of establishing a fully formed plan for importation. Dkt. No. 40 at 2, 4-5. But "a motion to dismiss for lack of jurisdiction is not a device for a summary trial of the evidence." *United States v. Milovanovic*, 678 F.3d 713, 724 (9th Cir. 2012). Ahmadi effectively seeks to litigate the whole case in the limited context of the jurisdiction question. That is not appropriate. It may be that trial establishes the absence of a nexus, in which case the indictment might properly be dismissed. But that question is so bound up in the facts that it cannot be resolved now. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) ("If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred.").

The motion to dismiss the indictment and the request for an evidentiary hearing are denied without prejudice. They may be renewed later if warranted.

## II. MOTION TO SUPPRESS

For a court to admit an incriminating statement made during a custodial interrogation, the defendant's "waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). A valid waiver of *Miranda* rights depends upon the "totality of the circumstances including the background, experience, and conduct of defendant." *Id.* The prosecution bears the burden of proof, and there is a presumption against waiver. *Id.* at 536-37. Ahmadi challenges only whether his waiver was knowing and intelligent. Dkt. No. 33.

The facts show that it was. Ahmadi was interviewed at the San Bruno police department by DEA Special Agent Irving Mera and two other agents with an interpreter. The Court has reviewed a sealed videotape of the interview and a certified transcript. Dkt. No. 37-1, Exh. A; Dkt. No. 45, Exh. C. The interview room looked like an office and had enough space to

4

accommodate the individuals involved.  Ahmadi was seated and not cuffed or restrained in any way.  Agent Mera read Ahmadi his *Miranda* rights in a measured and deliberate manner, and they were translated by the interpreter into Dari.  *See* Dkt. No. 33 at 2; Dkt. No. 37 at 3.  Ahmadi said he understood, and confirmed that he was willing to answer questions.  Dkt. No. 33 at 2; Dkt. No. 37 at 3.  The questions were asked in a clear and well-paced fashion, and Ahmadi did not appear to be confused or overwrought at any time.  When Ahmadi became slightly anxious as the agents started questioning him specifically about drug trafficking, the agents immediately took a break and left Ahmadi alone in the room; when they returned, Ahmadi indicated that he wanted to continue answering their questions.  *Id.*  Ahmadi was offered food and beverages during the interview.  The video tape shows no occasions of shouting or coercive tactics and generally depicts a calm interrogation.  It also shows that Ahmadi often understood statements in English without translation.

Ahmadi's main contention is that the waiver was not knowing and voluntary because of his inexperience with the American criminal justice system.  While a foreign national's prior experience with the American criminal justice system is a factor in determining whether a *Miranda* waiver was knowing and voluntary, this factor alone is not determinative.  *United States v. Amano*, 229 F.3d 801, 804-05 (9th Cir. 2000).  Ahmadi was fully assisted by a Dari interpreter and independently understood some English, has 12 years of schooling, and displayed no signs of failing to understand anything said or done during the interview.  The circumstances here show an intelligent defendant who understood the proceedings and his rights.  He did not sign written waiver, but that is not required.  *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir. 1997).  Because the "totality of the circumstances" shows that Ahmadi's waiver was knowing and voluntary, the motion to suppress is denied.  *Amano*, 229 F.3d at 705.

**IT IS SO ORDERED.**

Dated: October 16, 2017

JAMES DONATO
United States District Judge

5