UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>SHAMSUDDIN DOST,<br><br>Defendant. | Case No. 16-cr-00403-JD-1<br><br>**ORDER RE UA TESTIMONY**<br>Re: Dkt. Nos. 66, 75 |

For the trial of this heroin importation case, the United States asks for a variety of measures to protect the identities of an FBI and an Afghan undercover agent ("UA"). Defendant Dost has objected mainly on Confrontation Clause and public trial grounds. Because the government has shown potential threats to national security and the safety of the UAs from disclosure, the objections are overruled and the UAs will appear in court under the common-sense and least restrictive measures stated at the end of the order.

The protections of the Confrontation Clause and the public's rights to full access to criminal trials may be qualified by the least intrusive means of protecting the compelling interest of witness safety. *See generally Waller v. Georgia*, 467 U.S. 39 (1984); *Roviaro v. United States*, 353 U.S. 53 (1957). Limitations of these important constitutional rights should be imposed sparingly, and only after a careful assessment of: (1) the UA's involvement in the material facts; (2) the relationship between the defense and the UA's likely testimony; and (3) the government's interest in non-disclosure. *United States v. Gonzalo Beltran*, 915 F.2d 487, 488-89 (9th Cir. 1990).

The primary battleground here is the adequacy of the government's reasons for non-disclosure. The materials submitted by the government, specifically a detailed declaration by Matthew Debarno, Acting Assistant Director of the FBI Counterterrorism Division, establish good

grounds for a few limitations to protect the identity of the FBI UA. Debarno's declaration was filed ex parte and under seal pursuant to the Classified Information Procedures Act, 18 U.S.C. Appendix § 4, and Federal Rule of Criminal Procedure 16(d)(1). Without revealing the details of this sealed document, the Court finds that the declaration establishes that national security and the FBI UA's personal safety would be jeopardized by disclosure of the agent's identity. Among other consequences, disclosure would compromise the value and usefulness of one of a handful of FBI UAs involved in ongoing counterterrorism work, disclose FBI techniques to foreign intelligence services, and put the lives of the UA and the agent's family at risk.

The government's argument for the Afghan UA is not supported by an equivalent declaration but the facts presented in the government's motion are also compelling. The government states, without opposition by defendant, that the Afghan UA is actively involved in undercover work in Afghanistan and is the subject of a bounty for his identification. Dkt. No. 75 at 2. The government also cites violent threats against undercover operatives in the areas where the agent works. *Id*. The government advises that the Afghan UA has never met or spoken with defendant, and will testify primarily about the authenticity of recorded evidence. *Id*.

These facts are enough to order specific and reasonable limitations on disclosures relating to the UAs. It is true that the showing for the Afghan UA is not as detailed as for the FBI UA, but not so much as to warrant different treatment, particularly in light of the agent's limited role as witness in this case. The Court notes that, for each UA, the government has agreed to provide defendant with information about the UA's professional background, training and employment.

Consequently, the Court orders these least restrictive measures as a fair and reasonable balance of the constitutional rights at issue and the government's interest in non-disclosure:

(1) When either UA testifies, the courtroom will be closed except for court personnel, the jury, the defendant and his counsel, and counsel for the United States. The government is responsible for making available in an adjacent courtroom a CCTV video or equivalent broadcast of the UA testimony. The video will not show or disclose the image of the UA.

(2) The use of any non-official recording devices will be banned during the UA testimony

2

in both courtrooms.

(3) The UAs may testify under a pseudonym, and defendant may not ask any questions soliciting or calling for the disclosure of personally identifying information from them.

(4) No public disclosure of any recordings or reproductions, in any form, of the voice or visual image of the UAs is permitted.

(5) The UAs may enter and exit the courthouse and courtroom in a non-public manner to conceal their identity.

(6) All trial exhibits containing unpixelated images of the UAs or unobscured recordings of their true voices will be provided to defendant under a protective order that limits use to the trial in this action. These materials will be returned to the government after trial, and defendant and his counsel will not provide them to any other person or entity, and will not retain any copies.

(7) The government need not disclose the true name of the Afghan UA to defendant.

(8) To the extent not already done, the government will disclose to defendant information about the professional background, training and government employment of each UA by **December 27, 2017**.

None of these provisions may be changed in any way except by the Court. The parties may not stipulate to other arrangements without a Court order.

**IT IS SO ORDERED.**

Dated: December 18, 2017

JAMES DONATO
United States District Judge